

**Signed and Filed: June 16, 2009**

_____
**THOMAS E. CARLSON
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 01-30885 TEC |
| SUZANNE AVELLANO, | Chapter 13 |
| Debtor. | |
| SUZANNE AVELLANO, | Adv. Proc. No. 06-3145 TC |
| Plaintiff, | |
| vs. | |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION and UNITED STATES DEPT. OF HEALTH & HUMAN SERVICES, | |
| Defendants. | Adv. Proc. No. 08-3048 TC |
| SUZANNE AVELLANO, | |
| Plaintiff, | **MEMORANDUM DECISION** |
| vs. | |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, on behalf of UNIVERSITY OF CALIFORNIA SANTA BARBARA, | |
| Defendant. | |

MEMORANDUM DECISION                -1-

The court held a trial in this action on April 7, 2009. Ruth Elin Auerbach appeared for Plaintiff-Debtor Suzanne Avellano (Debtor). Miriam E. Hiser appeared for Defendant Educational Credit Management Corporation (ECMC). The court hereby determines that Debtor's obligation to ECMC is dischargeable in its entirety for the reasons set forth below, which shall constitute the court's findings of fact and conclusions of law.

FACTS

Suzanne Avellano tried very hard to become a college history professor. She obtained a B.A. in 1980, an M.F.A. in studio art in 1982, an M.A. in Iberian and Latin American Studies in 1984, and passed the qualifying exams for her Ph.D. in 1987, all from the University of California Santa Barbara (UCSB). Her academic career stalled, and her Ph.D. candidacy was cancelled, after she asserted a sexual harassment complaint against her dissertation advisor. Although she pursued her studies through 1995, she never obtained her Ph.D. Until very recently she was unable to obtain university records confirming her two masters degrees, because she was unable to pay the large student loan debt that she accumulated during her years of study.

Unable to obtain a job in her field of expertise, Ms. Avellano has largely done clerical work for the past thirteen years. She obtained a temporary position as a college instructor in 1995, but was unable to qualify for a permanent position, because she was unable to obtain her transcripts from UCSB. Ms. Avellano has earned the following adjusted gross income since she stopped her academic work at UCSB in 1995.

**MEMORANDUM DECISION** -2-

| Year | Amount |
|---|---|
| 1996 | $14,730 |
| 1997 | $26,624 |
| 1998 | $14,730 |
| 1999 | $40,175 |
| 2000 | $46,410 |
| 2001 | $65,622 |
| 2002 | $64,429 |
| 2003 | $46,067 |
| 2004 | $17,181 |
| 2005 | $42,178 |
| 2006 | $64,253 |
| 2007 | $58,197 |
| 2008 | $43,318 |
| 13-year average | $43,394[1] |

Ms. Avellano recently negotiated a settlement with the University of California, under which she released all claims against the University and agreed that she would not be allowed to finish her Ph.D. at the University, while the University agreed to release her transcripts and forgive those student loans she owed to the University. Ms. Avellano is now 56 years old. She testified that even though she now has access to her academic records, she will be unable to obtain her Ph.D., because she lacks sufficient financial resources to start anew at a different university.

Ms. Avellano owes $126,053 in guaranteed student loans to Defendant ECMC. The parties stipulate that, after consolidating her student loans in 1995, Ms. Avellano voluntarily paid $815 in

---

[1] Ms. Avellano's average AGI over the last five years is only slightly higher ($45,025).

**MEMORANDUM DECISION** -3-

1996, and $7,558 from 2001 to 2006 through her five-year chapter 13 plan. Debtor testified that both before and after the chapter 13 case, she offered to make payments that were the maximum she could afford to pay, but were less than the scheduled amount, and that ECMC refused to accept those partial payments.

LEGAL STANDARD

Guaranteed student loan debts are excepted from the discharge that a debtor receives in a chapter 7 case, unless such exception from discharge "would impose undue hardship on the debtor and debtor's dependents." 11 U.S.C. § 523(a)(8).

To establish the requisite undue hardship, the debtor must establish: (1) that she cannot maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that she has made a good faith effort to repay the loans. United Student Aid Funds, Inc. v. Pena (In re Pena), 155 F.3d 1108, 1111 (9th Cir. 1998).

"Minimal standard of living" does not mean a middle-class lifestyle, and contemplates that the debtor can be required to make "major personal and financial sacrifices," but it does not require the court rigidly to apply Internal Revenue Service standards or federal poverty guidelines. Education Credit Management Corp. v. Howe (In re Howe), 319 B.R. 886, 889-90 (9th Cir. BAP 2005). The court may consider such guidelines, but must make its determination on the basis of the debtor's individual circumstances, taking account of all actual expenses reasonably necessary to the

MEMORANDUM DECISION            -4-

maintenance of a minimal standard of living by that debtor.  Id. at 893-94.

DISCUSSION

1.  **Debtor has no disposable income over minimum living expenses from which to repay her student loans.**

Debtor was unemployed at the time of trial. Her adjusted gross income (AGI) for 2008 was $43,318. Her average AGI over the past thirteen years was $43,394, which would result in monthly take-home pay of $2,753 (with no deductions for medical insurance or for retirement other than Social Security).

At present, Debtor is actually incurring the following monthly expenses.

```
Rent              $1,567
Utilities             90
Food                 500
Medical              500²
Phone                110
Transportation        50
Cleaning/Laundry      90
Travel                25
TOTAL             $2,932
```

The expenditures shown above provide for Debtor's minimum expenses, rather than a middle-class lifestyle, as they provide Debtor modest housing, no automobile, and a total of only $300 per year to visit her daughter in Las Vegas and her parents in Southern California.  Indeed, the listed expenses probably understate Debtor's reasonable needs, as they include no allowance at all for clothing, books, or entertainment.  That Debtor's claimed expenses

---

² Debtor in the recent past had purchased health insurance for $500 per month. She does not currently have health insurance, because she cannot pay for it while she is unemployed. I determine that a minimal standard of living includes health insurance, and that she should be entitled to include her historical cost of health insurance in determining her expenses during time periods in which she is employed.

**MEMORANDUM DECISION**                -5-

are necessary to a minimal standard of living is supported by the fact that they are very similar to the IRS guidelines.[3]

So long as Debtor does not earn income materially above her thirteen-year average, she has no income in excess of those expenses reasonably necessary to maintain a minimal standard of living, and cannot make any payment on her obligation to ECMC.

2. **Debtor's lack of disposable income is likely to persist for the foreseeable future.**

For the reasons set forth below, I determine that Debtor's average future income is not likely to exceed the average income that she earned over the past thirteen years.

First, although Debtor is intelligent and well-educated, her skills are not readily marketable. Debtor's training is in art and Latin American history, which would be utilized most fully in college teaching. Debtor does not qualify for a tenure-track teaching position, however, because she does not have a Ph.D. Nor does she have the resources to obtain a Ph.D. Under her settlement with the University of California, Debtor is precluded from obtaining a Ph.D. at that school, and she does not have the financial resources to complete a Ph.D. program elsewhere. Gaining the ability to document her masters degrees will likely help Debtor to obtain a lower-level teaching position and utilize her skills more fully, but is not likely to enable her to increase her income above her historical average.

---

[3] See IRS Collection Financial Standards (necessary living expenses for a single person living in San Francisco County in 2009 is $2,820); cf. In re Voelkel, 322 B.R. 138, 148-49 (9th Cir. BAP 2005) (IRS standards represent a calculation of an individual's basic living expenses).

**MEMORANDUM DECISION** -6-

Second, although Debtor is a person who could readily learn new skills enabling her to perform higher-paying jobs in the business sector, her opportunity for acquiring such skills is limited. She does not have the financial resources to pay for such training herself and, at age 56, Debtor is also not the most natural recipient of employer-provided training, as an employer would have a limited number of working years to recover the cost of such training.

Third, Debtor is currently unemployed. Newly armed with records documenting her masters degrees, Debtor may be able to obtain a job that pays $60,000 or more, but it is also possible that she may remain unemployed for some time. The possibility that Debtor may be able to find a job enabling her to earn income above her thirteen-year historical average should be discounted for the likelihood of periodic employment. In light of Debtor's age and the current uncertain status of the American economy, I determine that it is more likely than not that Debtor's average future income will not materially exceed her thirteen-year historical average.

3. **Debtor has made a good faith effort to repay her student loans.**

"Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses." ECMC v. Mason (In re Mason), 465 F.3d 878, 884 (9th Cir. 2006) (citation omitted). Courts will also consider a "'debtor's effort-or lack thereof-to negotiate a repayment plan' although a history of making or not making payments is, by itself, not dispositive." Mason, 464 F.3d at 884 (citation omitted).

Since withdrawing from her studies in 1996, Debtor has worked every year until February 2008, when she was laid off. After

**MEMORANDUM DECISION** -7-

unsuccessful efforts in 1995 to obtain a permanent teaching position, Debtor obtained various clerical jobs, earning a yearly average of $43,394 from 1996 through 2008. Debtor was unable to obtain employment in her area of expertise, due to UCSB's refusal to release her transcripts until three months ago.

Debtor lives frugally. As noted above, her monthly expenses cover only her basic, necessary living expenses. Debtor has voluntarily paid $8,373.47 to ECMC. The bulk of that amount was paid pursuant to Debtor's chapter 13 plan, which required Debtor to commit all of her disposable income to payment of creditors for a five-year period. Debtor made all the payments required under that plan. Debtor's unrebutted testimony established that both before and after her chapter 13 case, she tendered partial payments to ECMC, but that ECMC rejected those payments.

Because Debtor has worked diligently since 1996, because Debtor lives frugally, because Debtor made two voluntary payments to ECMC in 1996 and paid one hundred percent of her disposable income towards debt repayment between 2001 and 2006, and because before and after after completion of her plan, Debtor tendered ECMC partial payments and ECMC refused such payments, I determine that Debtor has made good faith efforts to repay ECMC.

CONCLUSION

I determine that Debtor has made a good faith effort to repay the ECMC student loan, that Debtor cannot pay any amount on that loan while maintaining a minimal standard of living, and that this financial condition is likely to persist for the foreseeable future. Accordingly, I determine that Debtor's obligation to ECMC is dischargeable in its entirety.

**\*\*END OF MEMORANDUM DECISION\*\***

MEMORANDUM DECISION                -8-

## Court Service List

Ruth Elin Auerbach
Law Offices of Ruth Elin Auerbach
711 Van Ness Avenue, Suite 440
San Francisco, CA 94102

Miriam E. Hiser, Esq.
Law Offices of Miriam E. Hiser
550 Montgomery Street, Suite 650
San Francisco, CA 94111

Eric K. Behrens
The Regents of the University of Calif.
1111 Franklin Street, 8th Floor
Oakland, CA 94607-5200

Kevin V. Ryan, Esq.
Office of the U.S. Attorney
450 Golden Gate Avenue
Box 36055
San Francisco, CA 94102-3495

**MEMORANDUM DECISION**